# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

DENNIS and ERICA MOURA,
    Plaintiffs,

v.

HARLEYSVILLE PREFERRED
INSURANCE COMPANY and LIBERTY
INSURANCE CORPORATION,
    Defendants.

No. 3:18-cv-422 (VAB)

**RULING AND ORDER ON MOTION TO AMEND THE COMPLAINT**

On February 9, 2018, Dennis and Erica Moura ("Plaintiffs" or "The Mouras") filed a civil Complaint in Connecticut Superior Court against Harleysville Preferred Insurance Company ("Harleysville") and Liberty Insurance Corporation ("Liberty" and together, "Defendants"), the companies that allegedly insured their home. Compl., ECF No. 1-1.

The Mouras allege that Defendants failed to honor their homeowner's insurance policies when the Mouras' basement walls cracked due to allegedly faulty concrete. Compl. ¶¶ 4, 8, 19, 26, 28, 38.

On March 9, 2018, Harleysville removed the case to this Court on diversity grounds under 28 U.S.C. § 1441(a). Notice of Removal, ECF No. 1, ¶¶ 5–7.

On April 18, 2018, before Defendants had responded to the Complaint, the Mouras filed a motion to add one count against Liberty and three counts against Harleysville. Mot. to Amend or Correct, ECF No. 19.

On May 9, 2018, Liberty objected to the motion to amend with respect to the Mouras' new claim against Liberty. Obj. to Pls. Mot. for Leave to Amend Compl., ECF No. 25.

For the reasons set forth below, the Court now **GRANTS in part and DENIES in part** Plaintiffs' motion to amend or correct the Complaint, ECF No. 19.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The Mouras allegedly purchased their home in 2009. Compl. ¶ 3. The home was allegedly built in 1998, *id.*, using concrete "likely from the J.J. Mottes Concrete Company," *id.* ¶ 9. In March of 2017, the Mouras allegedly noticed horizontal and vertical cracks in their basement walls. *Id.* ¶ 6. After investigating the cause of the cracking, the Mouras concluded that it was likely due to a form of concrete that oxidizes, expands, and breaks the bonds of the concrete. *Id.* ¶ 9.

In their view, it was "only a question of time until the basement walls of [their] home [fell] in due to the exterior pressure from the surrounding soil." *Id.* ¶ 12. Accordingly, they allegedly filed claims for insurance coverage with Defendants. *Id.* ¶¶ 15, 37. In their Complaint, the Mouras alleged that Harleysville had not yet decided whether it would cover their alleged losses, *id.* ¶ 19, and that Liberty had denied their claim for coverage, *id.* ¶ 38. Plaintiffs sought Declaratory Judgment against Harleysville, and damages for Breach of Contract, violations of the Connecticut Unfair Insurance Practices Act (CUIPA) and Connecticut Unfair Trade Practices Act (CUTPA) against Liberty. *Id.* ¶¶ 23–61.

### B. Procedural Background

Following Harleysville's removal of the case to this Court, Notice of Removal, the Court issued a Standing Order on pretrial deadlines, Order on Pretrial Deadlines, ECF No. 7. Three days later, the parties file a consent motion for an extension of time until April 30, 2018 for

Harleysville to respond to the Complaint. Motion for Extension, ECF No. 15. On March 13, 2018, the Court granted that motion. Order, ECF No. 16.

On April 18, 2018, before Defendants responded to the Complaint, the Mouras filed the present motion to amend or correct. Mot. to Amend or Correct. The Mouras allege that, since the filing of their initial Complaint, Harleysville has "issued a formal coverage decision denying the plaintiffs' claim for coverage." *Id*. ¶ 8. The Mouras contend that that "denial gives rise to additional claims against the defendant including breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive practices in violation of [CUTPA] and [CUIPA]." *Id*. ¶ 9. The Mouras thus seek to add those claims against Harleysville and to add a breach of implied covenant of good faith and fair dealing claim against Liberty.

On May 9, 2018, Liberty objected to Plaintiffs' motion to add an additional claim against Liberty. Obj. to Pls. Mot. for Leave to Amend Compl., ECF No. 25.

## II.    STANDARD OF REVIEW

This case implicates both the *Erie* doctrine and the standard for leave to file an amended complaint.

Defendants may remove a case in diversity to federal court so long as diversity exists among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332 (a); 28 U.S.C. § 1441(a–b). Under the *Erie* doctrine, "[f]ederal courts sitting in diversity apply state substantive law and federal procedural law" to the matters before them. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013) ("[F]ederal courts apply those state rules of decision that are 'substantive' under Erie, and are consistent with federal law."); *see also Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

3

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). FED. R. CIV. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id*.

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)).

## III. DISCUSSION

Connecticut state and federal courts have been addressing liability issues related to a number of faulty foundation cases. *See, e.g., Karas v. Liberty Ins. Corp.,* No. 3:13-CV-01836 (SRU), 2018 WL 2002480 (D. Conn. Apr. 30, 2018); *Metsack v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01150 (VLB), 2017 WL 706599, at *1 (D. Conn. Feb. 21, 2017); *see also Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246, 248, 532 A.2d 1297, 1298 (1987).

On April 30, 2018, Judge Underhill certified to the Connecticut Supreme Court the question "What constitutes a 'substantial impairment of structural integrity' for purposes of

applying the 'collapse' provision of this homeowners' insurance policy?" *Karas,* 2018 WL 2002480 at *5.

On December 18, 2018, the Connecticut Supreme Court heard arguments on the certified question in *Karas*. Kathleen McWilliams, *Top Court Hears Arguments about Whether Insurance Companies Should Pay for Crumbling Foundations*, HARTFORD COURANT, Dec. 18, 2018 (Feb. 20, 2019) http://www. courant.com/news/connecticut/hc-connecticut-crumbling-concrete-supreme-court-20181218-dt44ptplgvarbaq7m36bwk7dli-story.html. *Karas*, like a number of other cases in the district, includes a claim for breach of the implied covenant of good faith and fair dealing. *Karas,* 2018 WL 2002480; *see, e.g.*, *Metsack v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01150 (VLB), 2015 WL 5797016, at *8 (D. Conn. Sept. 30, 2015); *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 164 (D. Conn. 2014).

In Connecticut, the majority of contracts include an implied covenant of good faith and fair dealing, which operates as a rule of interpretation to ensure that rights under the contract are not unfairly impeded. *Magnan v. Anaconda Indus., Inc*., 193 Conn. 558, 566; 479 A.2d 781, 785 (1984) (noting that the Restatement (Second) of Contracts recognizes this covenant in every contract "without limitation") (citing Restatement (Second) of Contracts § 205 (1979)); *De La Concha of Harford, Inc. v. Aetna Life Ins. Co*., 269 Conn. 424, 433 (2004) ("The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term.") (citation and internal quotation marks omitted)).

"To constitute a breach of [the implied covenant], the acts by which a defendant allegedly impede[d] the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Colon v. Commonwealth Annuity and Life*

*Ins. Co.*, No. 3:08-CV-00079 (PCD), 2008 WL 2185923, at *2 (D. Conn. May 22, 2008), quoting *De La Concha of Hartford, Inc*., 269 Conn. at 433; see also *Magnan*, 193 Conn. at 567 (describing the covenant as a "rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended."); *Landry v. Spitz*, 102 Conn. App. 34, 43 (Conn. App. Ct. 2007) ("a party who evades the spirit of the contract . . . may be liable for breach of the implied covenant of good faith and fair dealing").

The implied covenant of good faith and fair dealing arises entirely out of Connecticut common law. *Magnan v. Anaconda Indus., Inc.*, 193 Conn. at 566 ("The implied covenant of good faith and fair dealing has been applied by this court in a variety of contractual relationships, including: leases . . . insurance contracts . . . and construction contracts [.]" (internal citations omitted)). Under the *Erie* doctrine, the Court looks to state court opinions to determine the contours of the implied covenant of good faith and fair dealing. *Gasperini*, 518 U.S. at 427. In cases that turn on common law, the parties before this Court typically point to dissonance among the relevant state's courts. Here, both sides agree that Connecticut courts would "typically" reject the Plaintiffs' claims.

Plaintiffs suggest that "while the Tolland Superior Court has not typically found the type of conduct employed by insurers in the context of these concrete decay claims sufficient to state a claim for relief on a theory of breach of the implied covenant of good faith and fair dealing, [the district's courts] upheld such counts on a number of occasions" in 2014 and 2015. Mot. to Amend or Correct ¶ 10. Plaintiffs also argue that as a "consequence of [Harleysville's] decision to remove this matter" to federal court, *id*. ¶ 11, the Court should allow Plaintiffs to pursue a claim that would "typically" fail in state court. *Id*.

Liberty argues that Plaintiffs should not be permitted to add implied covenants claims because similar claims have failed in state court. Obj. to Pls. Mot. for Leave to Amend Compl. at 2.

The Court agrees.

Since Liberty and the Mouras are in agreement that the Tolland Superior Court, in which this case was originally filed, Compl., would typically not find "the type of conduct employed by insurers in the context of these concrete decay claims sufficient to state a claim for relief on a theory of breach of the implied covenant of good faith and fair dealing" Mot. to Amend or Correct ¶ 10, the Court finds the addition of implied covenant claims futile. *See Foman*, 371 U.S. at 182 (Stating that leave to amend may be warranted in cases of "undue delay . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]").

Plaintiffs argue that permitting them to add the implied covenant claims would properly punish Defendant Harleysville for exercising its right of removal under 28 U.S.C. § 1332 (a); 28 U.S.C. § 1441(a–b). The Court disagrees. Plaintiffs cite to no legal authority for the proposition of penalizing Harleysville for removal of a case to this Court. As a result, the Court denies Plaintiffs' leave to add implied covenants claims to the Complaint, Proposed First Amended Compl., ECF No. 19-2, ¶¶ 29–36, 73–80, against either Defendant.

Harleysville has raised no objection to Plaintiffs' addition of breach of contract, CUTPA, and CUIPA claims to the Complaint. Plaintiffs' request stems from an alleged denial, received after the filing of their state court complaint, that allegedly gives rise to these new claims. Mot. to Amend or Correct, ¶ 9.

Given the recency of the denial, its relation to the new claims, and the early procedural posture of this case, the Court finds good cause to grant Plaintiffs' motion to amend or correct with respect to the breach of contract, CUTPA, and CUIPA claims against Harleysville, Proposed First Amended Compl., ECF No. 19-2, ¶¶ 26–28, 37–53.

**IV.	CONCLUSION**

For the reasons set forth above, the Court now **GRANTS in part and DENIES in part** Plaintiffs' motion to amend or correct the Complaint, ECF No. 19.

In keeping with this Ruling and Order, Plaintiffs should file their Amended Complaint on the docket no later than March 8, 2019.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of February, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE