|  |  |
|---|---|
| DENNIS M. MOURA & ERICA R. MOURA,<br>    *Plaintiffs*,<br><br>      v.<br><br>HARLEYSVILLE PREFERRED INSURANCE COMPANY & LIBERTY INSURANCE CORPORATION,<br>    *Defendants*. | No. 3:18-cv-422 (VAB) |

## RULING AND ORDER ON MOTION TO DISMISS

Dennis and Erica Moura ("the Mouras" or "Plaintiffs") originally brought this lawsuit against Harleysville Preferred Insurance Company and Liberty Insurance Corporation (collectively, "Defendants") in Connecticut Superior Court. Harleysville Preferred Insurance Company ("Harleysville") then removed this lawsuit to the District of Connecticut.

The Mouras' Amended Complaint brings breach of contract claims and claims under the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA") against both Defendants.

Harleysville moved to dismiss the counts against Harleysville alone—Counts One, Two, and Three of the Amended Complaint—on March 20, 2019. That motion is now before the Court.

For the following reasons, the motion to dismiss is **GRANTED** in part and **DENIED** in part**.** Count One, seeking declaratory relief, is dismissed from the case, but the claims brought under Counts Two and Three, for breach of contract and under CUTPA, will remain.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[1]

This case is one of many "crumbling concrete" cases in this District.

In June of 2009, the Mouras purchased their home in South Windsor, Connecticut, a home built in 1998. Am. Compl. ¶ 7.

From 2009 until 2012, the Mouras allegedly insured their home through a homeowner's policy issued by Harleysville. *Id.* ¶ 8.

Since 2012, the Mouras have allegedly insured their home through a homeowner's policy issued by Liberty Insurance Corporation ("Liberty"). *Id.* ¶ 48.

In March of 2017, the Mouras "noticed that the basement walls of their home had a series of horizontal and vertical cracks throughout after seeing local news coverage concerning the deterioration of basement walls in Tolland County." *Id.* ¶ 10. The Mouras allegedly immediately began investigating the "pattern cracking," consulting with "various contractors and professionals." *Id.* ¶ 11.

The Mouras allegedly learned through their investigation that the form of "pattern cracking" found in the basement walls of their home was due to a chemical compound found in certain basement walls constructed in the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company," *id.* ¶ 12, and that this chemical compound would, when mixed "with the water, sand and cement necessary to form the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble," *id.* ¶ 13.

---

[1] All factual allegations are drawn from the Amended Complaint.

The Mouras allege that "[a]t some point between the date on which the basement walls were poured and March of 2017 the basement walls suffered a substantial impairment to their structural integrity." *Id.* ¶ 15. Plaintiffs allege that "[i]t is only a question of time until the basement walls of the plaintiffs' home will fall in due to the exterior pressure from the surrounding soil," *id.* ¶ 16, and that "[w]ith the falling in of the basement walls, the entire home will fall into the basement," *id.* ¶ 17.

The Mouras allege that, "[p]ursuant to the terms of the homeowner's policies issued to the plaintiffs, Harleysville agreed to provide coverage for the collapse of a building or any part of a building caused by hidden decay or the use of defective materials or methods in construction," *id.* ¶ 20, and that "[t]he damage suffered to the basement walls of the plaintiffs' home is a coverage loss under the terms of one or more of the homeowner's policies issued by Harleysville during the years that it covered their home," *id.* ¶ 21.

On or about April 17, 2017, the Mouras allegedly notified Harleysville of the condition of their basement walls. *Id.* ¶ 18.

In a letter dated February 23, 2018, Harleysville allegedly denied coverage. *Id.* ¶ 22. The Mouras claim that the "grounds offered by Harleysville for the denial of coverage are contrary to the express provisions of the homeowner's insurance policies it issued to the [P]laintiffs." *Id.* ¶ 23.

The Mouras further allege that Harleysville

> participates in the Insurance Services Office, Inc., ("ISO") which is a cooperative organization formed and controlled by its participants for the purpose, among others, of collecting data on the type of claims made, the policy provisions cited for the basis of each claim, the geographic areas in which the claimed damage has occurred, and the actions taken by insurers in response to such claims.

*Id.* ¶ 32. The ISO is allegedly "instrumental in drafting policy provisions," and it allegedly "prepares interpretations or advice as to the meaning of these provisions." *Id.* ¶ 33.

Through the ISO, Harleysville allegedly "has knowledge that most, if not all, insurers responding to concrete decay claims in residential structures in northeastern Connecticut have attempted to deny coverage on the grounds that the condition is the result of one or more excluded causes," *id.* ¶ 36, and "has knowledge of cases . . . where the plaintiffs were awarded judgment against the insurer on a concrete decay claim based on policy language nearly identical to that in the [P]laintiffs' policy," *id.* ¶ 37.

### B. Procedural History

On February 8, 2018, the Mouras sued Harleysville and Liberty Insurance Company in Connecticut Superior Court. Notice of Removal Ex. A, ECF No. 1-1 at 7 (Mar. 9, 2018) (Complaint, *Moura v. Harleysville Preferred Ins. Co.*, TTD-cv18-6014177-S (Feb. 8, 2018)).

On March 9, 2018, Harleysville removed the case to this Court. Notice of Removal, ECF No. 1 (Mar. 9, 2018).

On April 18, 2018, the Mouras filed a motion to amend or correct their Complaint. Mot. to Amend/Correct Compl., ECF No. 19 (Apr. 18, 2018). Liberty Insurance Company objected to the motion to amend or correct on May 9, 2018. Obj. to Pls.' Mot. for Leave to Amend Compl., ECF No. 25 (May 9, 2018).

On February 26, 2019, the Court granted in part and denied in part Plaintiffs' motion to amend or correct. Order Granting in Part and Denying in Part Mot. to Amend/Correct Compl., ECF No. 31 (Feb. 26, 2019).

On March 8, 2019, Plaintiffs submitted an Amended Complaint. Am. Compl., ECF No. 32 (Mar. 8, 2019). The Amended Complaint seeks a declaratory judgment, stating that Harleysville denied coverage to Plaintiffs in violation of the terms of the Plaintiffs' insurance policy; brings a breach of contract claim against Defendants for denying claims for crumbling

concrete coverage (Counts Two and Four); and brings claims under CUIPA and CUTPA (Counts Three and Five). *Id.*

On March 20, 2019, Harleysville moved to dismiss all claims against Harleysville—Counts One, Two, and Three of the Amended Complaint. Mot. to Dismiss, ECF No. 33 (Mar. 20, 2019); Mem. Sup. Mot. to Dismiss ("Def.'s Mem."), ECF No. 34 (Mar. 20, 2019).

On April 10, 2019, Plaintiffs filed a memorandum in opposition to Harleysville's motion to dismiss. Mem. Opp. Mot. to Dismiss ("Pls.' Mem."), ECF No. 35 (Apr. 10, 2019).

On April 23, 2019, Harleysville replied to Plaintiffs' response to Harleysville's motion to dismiss. Reply to Response to Mot. to Dismiss ("Def.'s Reply"), ECF No. 36 (Apr. 23, 2019).

On October 16, 2019, the Court held a hearing on Harleysville's motion to dismiss. Minute Entry, ECF No. 43 (Oct. 16, 2019).

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of [his or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the

complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

## III.    DISCUSSION

### A.    The Declaratory Judgment Claim

Plaintiffs request a declaratory judgment against Harleysville finding that Harleysville's denial of coverage for the alleged damage to the Mouras' basement was contrary to the express provision of the Mouras' homeowner's insurance policy with Harleysville. Am. Compl. ¶ 23.

Harleysville argues that the request for declaratory judgment should be dismissed because it duplicates the Plaintiffs' breach of contract claim in Count Two. Def.'s Mem. at 5-6.

The Court agrees.

Under the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such a declaration" in "a case of actual controversy." 28 U.S.C. § 2201(a). The Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

In evaluating a claim for declaratory judgment, the Court considers factors including "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; . . . whether a judgment would finalize the controversy and offer relief from uncertainty; . . . and whether there is a better or more effective remedy." *N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (internal citations and quotation marks omitted). "Declaratory relief is not intended to provide plaintiff a second cause of action for the determination of identical issues." *Burgeson v. Downing*, No. 3:06-cv-1663 (WWE) (HBF), 2009 WL 185593, at *1 (D. Conn. Jan. 22, 2009) (internal citation and quotation marks omitted).

In *Burgeson*, the court denied plaintiff's request to add declaratory relief claims to a complaint because, "[i]f plaintiff were to prevail on his claims for damages, the Court necessarily would have determined that plaintiff's rights were violated. A declaration to that effect adds nothing to the case." *Id.*; *see also East Point Sys., Inc. v. Maxim*, No. 3:13-cv-00215 (VLB), 2014 WL 523632, at* 13 (D. Conn. Feb. 7, 2014) ("no independent declaration of rights is needed because the rights between the Plaintiffs and Defendants will be completely adjudicated when the Plaintiffs claims are decided."); *U.S. Bank Nat. Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2014 WL 998358, at *8-9 (S.D.N.Y. Mar. 14, 2014) (denying declaratory relief in a case where a breach of contract claim duplicated a declaratory judgment claim).

Here, Count Two of the Amended Complaint replicates Plaintiffs' claims in Count One. In deciding whether Harleysville is liable for breach of contract, the Court will necessarily decide whether Harleysville's denial of coverage for the alleged damage to the Mouras' basement was contrary to the express provision of the Mouras' homeowner's insurance policy. The declaratory judgment claim therefore adds nothing to the substance of this lawsuit.

Indeed, Plaintiffs acknowledge that, since "Harleysville concedes that the two counts are so closely related that they would necessarily arise out of the same conduct, transaction, or occurrence . . . dismissal of the declaratory judgment count is of little consequence." Pls.' Mem. at 4 n.1.

Accordingly, Count One of the Amended Complaint will be dismissed.

## B. The Breach of Contract Claim

"[I]nsurance policies are construed and enforced under principles of contract law." *Discuillo v. Allstate Ins. Co.*, No. 3:17-CV-234 (KAD), 2019 WL 499255, at *2 (D. Conn. Feb. 8, 2019). Their "language should be construed in favor of the insured unless it has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Liberty Mut. Ins. Co. v. Lone Star Indus.*, 290 Conn. 767, 795 (2009) (quoting *Kelly v. Figueiredo*, 223 Conn. 31, 37 (1992)).

> An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract. . . . In accordance with those principles, the determinative question is the intent of the parties, that is, what coverage the . . . insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy.

*Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 372–73 (2008) (internal quotation marks and alterations omitted) (quoting *Conn. Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 5 (2008)). Courts should construe insurance contracts as laypeople would. *Kim v. State Farm Fire & Cas. Ins. Co.*, No. 17-2304-CV, 2018 WL 4847195, at *1 (2d Cir. Oct. 5, 2018) (summary order) (citing *Vt. Mut. Ins. Co. v. Walukiewwicz*, 966 A.2d 672, 678 (Conn. 2009) (internal quotation marks and citations omitted)).

The Amended Complaint does not quote any language from the contract, nor does it attach a copy of the contract. Instead, it states that "[p]ursuant to the terms of the homeowner's

policies issued to the [P]laintiffs, Harleysville agreed to provide coverage for the collapse of a building or any part of a building caused by hidden decay or the use of defective materials or methods in construction." Am. Compl. ¶ 20.

The Mouras allude more directly to their contract's language in their response to the motion to dismiss, stating that their "allegations clearly implicate the collapse provision of the Harleysville policies." Pls.' Mem. at 8. But they again fail to quote the language of the collapse provision or to attach the policy.

Harleysville has attached a policy to its Reply "due to Plaintiffs' Opposition's misrepresentation of the Harleysville Policy's similarity to the one at issue in *Beach* [*v. Middlesex Mut. Assur. Co.*, 205 Conn. 246, 251 (1987)]." Defs.' Reply at 5-6. Harleysville argues that because Plaintiffs did not attach the policy to their Amended Complaint, it "moved to dismiss based on the four corners of the . . . pleading." *Id.* at 5.

"[A] district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), 'is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.' " *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). "A mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Id.* (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)).

The Second Circuit also, however, provides an exception allowing a court to consider "a document upon which the complaint solely relies and which is integral to the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal alterations, citations, and quotation marks

omitted). A written contract is, of course, integral to a claim that a written contract was breached. Additionally, the Mouras indicate the relevant provision of the contract: "the collapse of a building or any part of a building caused by hidden decay or the use of defective materials or methods in construction." Am. Compl. ¶ 20. Harleysville also makes arguments based on the language of the collapse provision of the policy, indicating that Harleysville understood the Amended Complaint as making arguments as to the collapse provision of the policy. Def.'s Reply at 3-6. Thus, it appears that Harleysville did have "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

As a result, the Court will evaluate the language in the contract attached to Harleysville's Reply in evaluating the breach of contract claim, Def.'s Reply Ex. A, ECF No. 36-1 at 44 (Apr. 23, 2019) (Certified Copy of Harleysville's Insurance Policy issued to Plaintiffs at Section I-Property Coverage, Additional Coverages ¶ 8 (Mar. 26, 2010)) ("Harleysville Policy"), even though no policy was attached to the Amended Complaint. *See McClain v. Pfizer, Inc.*, No. 3:06-cv-1795 (WWE), 2008 WL 681481, at *2 (D. Conn. Mar. 7, 2008) (considering, in evaluating a motion to dismiss, "OSHA letters attached as exhibits to the memoranda of law regarding this motion but not the complaint . . .").

The "collapse" provision of the Mouras' policy reads as follows:

> **8. Collapse**. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
>
>   **a.** Perils Insured Against in COVERAGE C – PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;
>   **b.** Hidden decay;
>   **c.** Hidden insect or vermin damage;
>   **d.** Weight of contents, equipment, animals or people;
>   **e.** Weight of rain which collects on a roof; or

> **f.** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.
>
> Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is the direct result of the collapse of a building.
>
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

Harleysville Policy ¶ 8.

Courts addressing the many "crumbling concrete" claims now in this District have recognized a distinction between ambiguous and unambiguous "collapse" provisions which "turns on whether the term 'collapse,' as defined in the policy, stands alone or is modified by other terms indicating some temporal quality." *Halloran v. Harleysville Preferred Ins. Co.*, No. 3:16-cv-00133 (VAB), 2018 WL 5840031, at *9 (D. Conn. Nov. 8, 2018). When the collapse term is undefined or unqualified, courts in this District generally apply the Connecticut Supreme Court's decision in *Beach v. Middlesex Mutual Assurance Company*, 205 Conn. 246 (1987). *Id.*

"In contrast, when collapse is modified by terms such as 'sudden and accidental' or 'abrupt,' courts in this District have held that the terms of the policy are unambiguous and that the plaintiffs in concrete cases have not alleged such a collapse." *Id.* at *10 (citing *Valls v. Allstate Ins. Co.*, No. 3:16-cv-01310 (VAB), 2017 WL 4286301, at *5 (D. Conn. Sept. 27, 2017) ("The Vallses' policy, however, explicitly requires that any collapse be 'a sudden and accidental direct physical loss' and a 'complete collapse.' As addressed above, they have not alleged a sudden collapse."); *Manseau v. Allstate Ins. Co.*, No. 3:16-cv-1231 (MPS), 2017 WL 3821791, at *5 (D. Conn. Aug. 31, 2017) ("Regardless of whether the loss is characterized as a collapse or a chemical reaction, Plaintiffs fail to allege that any loss occurred suddenly, that is, temporally

abruptly, as required for coverage to apply."); *Hurlburt v. Mass. Homeland Ins. Co.*, No. 3:17-cv-503 (VAB), 2018 WL 1035810, at *5 (D. Conn. Feb. 23, 2018) (interpreting policy that defined "collapse" as "an abrupt falling down," and stated that the policy covered "sudden and accidental direct physical loss" to be unambiguous and "require[ ] a temporal quality").

Plaintiffs argue that the term "collapse" is not defined in their contract, and the Court should therefore apply *Beach* and find that "the term 'collapse' is "sufficiently ambiguous to include coverage for any substantial impairment to the structural integrity of a building." Pls.' Mem. at 6 (quoting *Beach*, 205 Conn. at 251). Plaintiffs also argue that this definition has been applied to policies in other "crumbling concrete" cases where "collapse" is not defined. *See Halloran*, 2018 WL 5840031, at * 9. If the Court applies this test, Plaintiffs argue, their allegation that the "basement walls suffered a substantial impairment to their structural integrity," Am. Compl. ¶ 15, is sufficient to state a claim of breach of contract. Pls.' Mem. at 6.

Harleysville argues that *Beach* does not apply here because the Mouras' "collapse" provision is qualified: "Collapse does not include settling, cracking, shrinking, bulging or expansion." Def.'s Reply at 4 (Harleysville Policy ¶ 8). Harleysville argues further that *Beach* does not apply because the court in *Beach* "relied heavily, if not entirely, on the word 'ensues[]' " in the disputed policy. Def.'s Reply at 4-5. Because the Mouras' policy "contains qualifying 'collapse' language, and does not reference collapses that ensue," Harleysville argues that "the *Beach* holding does not apply." *Id.* at 5.

The Court disagrees.

The policy in *Beach* excluded "settling, cracking, shrinkage, bulging or expansion . . . unless . . . collapse of a building . . . not otherwise excluded ensues, then this policy shall cover only such ensuing loss." *Beach*, 205 Conn. at 250. There, the insurance company argued that the

definition of "collapse" in its policy should be interpreted narrowly in one of two ways: (1) as "unambiguously connot[ing] a sudden and complete catastrophe," based on a dictionary definition of the word "collapse;" or (2) as a "casualty of a sudden and cataclysmic nature," based on the clause "excluding liability for loss by 'settling, cracking, shrinkage, bulging or expansion.' " *Id.* at 251. The court found that,

> [b]y its reference to a "collapse" that "ensues," the policy in this case can reasonably be understood to have contemplated coverage for a "collapse" that follows consequentially from excluded activity. Read in its entirety, therefore, the defendant's policy does not unambiguously limit its liability to a "collapse" of a sudden and catastrophic nature.

*Id.* at 252.

But the *Beach* court did not indicate that the exclusion of "settling, cracking, shrinkage, bulging or expansion" would have rendered the term "collapse" unambiguous, if it had not been modified by the "ensues" language. Rather, the court stated that, while "the defendant's reading of the relationship between the exclusionary clause and the meaning of 'collapse' is a plausible one, an alternate reading is equally reasonable." *Id.* at 251. Furthermore, courts have found in other "crumbling concrete" cases, that the "collapse" provision is ambiguous under *Beach* even where the policy excludes "settling, cracking, shrinkage, bulging or expansion." *See, e.g. Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 407 (D. Conn. 2017) (finding, on summary judgment, that the "collapse" provision was ambiguous under *Beach* despite a "settling, cracking, shrinking, bulging or expansion" exclusion); *Agosti v. Merrimack Mut. Fire Ins. Co.*, 279 F. Supp. 3d 370, 377 (D. Conn. 2017) (holding that "the 'cracking' exclusion alone does not require [the court] to dismiss the [plaintiffs'] claims against Allstate").

As the court in *Agosti* pointed out, the language of a collapse provision that excludes "settling, cracking, shrinking, bulging or expansion" is fairly susceptible to an interpretation that

the exclusion only applies to settling or cracking that constitutes standard wear and tear on homes, not settling or cracking that constitutes substantial impairment of a home's structural integrity. *Agosti*, 279 F. Supp. at 376 ("[T]he language of the 'cracking' exclusion is fairly susceptible to being interpreted as not including mere settling or cracking, but including settling or cracking that results in substantial impairment of a home's structural integrity.") (internal citations omitted)). Thus, a plaintiff's "claim does not fail merely because the impairment initially manifests itself as cracking." *Id.* at 377.

The Mouras' policy with Harleysville does not include any language modifying "collapse" temporally, such as "sudden and accidental" or "abrupt." The only modification of the word "collapse" is the exclusion of "settling, cracking, shrinkage, bulging or expansion." Since that exclusion alone does not render the term "collapse" unambiguous, the Court finds that the "collapse" provision in the Mouras' policy is ambiguous under *Beach*.

As a result, the Mouras' specific factual allegations (1) that they observed "a series of horizontal and vertical cracks" in their basement, Am. Compl. ¶ 10; (2) that professionals had determined the basement damage was associated with a certain chemical compound which would, when mixed "with the water, sand and cement necessary to form the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble," *id.* ¶ 11-13; and (3) that this damage constituted "substantial impairment to the[] structural integrity" of their basement walls, *id.* ¶ 15, are sufficient to survive a motion to dismiss.

Accordingly, Count Two, the breach of contract claim against Harleysville, will not be dismissed.

**C.     The CUTPA and CUIPA claims**

A plaintiff may bring a private cause of action under the Connecticut Unfair Trade

Practices Act, "CUTPA," to enforce alleged violations of the Connecticut Unfair Insurance

Practices Act, "CUIPA." *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-cv-879 (VLB), 2015 WL

6675532, at \*5 (D. Conn. Oct. 30, 2015) (citing *Mead v. Burns*, 199 Conn. 651, 663 (1986)).

CUTPA/CUIPA claims "are premised on finding a breach of contract." *Kim v. State Farm Fire*

*& Cas. Ins. Co.*, 751 Fed. App'x 127, 128 n.1 (2d Cir. 2018); *Roberts*, 264 F. Supp. 3d at 416

("Similarly, 'a claim for violation of CUTPA/CUIPA cannot succeed in the absence of a viable

claim for breach of contract.'"); *Zulick v. Patrons Mut. Ins*. Co., 287 Conn. 367, 378 (2008)

("The foregoing analysis disposes of the plaintiffs' claim that the trial court improperly rendered

summary judgment in favor of the defendant on the plaintiffs' CUTPA and CUIPA claims.

Because we have concluded that the defendant's interpretation of the policy's coverage

limitation was correct, there can be no genuine issue of material fact as to whether the

application of that interpretation as a general business practice constituted oppressive, unethical

or unscrupulous conduct in violation of the statutes.").

> In determining whether a practice violates CUTPA, we are guided
> by the criteria set out in the Federal Trade Commission's so-called
> cigarette rule:
> (1)  '[W]hether the practice, without necessarily having been
>       previously considered unlawful, offends public policy as it has
>       been established by statutes, the common law, or otherwise—
>       in other words, it is within at least the penumbra of some
>       common law, statutory, or other established concept of
>       unfairness;
> (2)  whether it is immoral, unethical, oppressive, or unscrupulous;
> (3)  whether it causes substantial injury to consumers, [competitors
>       or other businesspersons].'

*Zulick*, 287 Conn. at 378 n.11 (quoting *Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 155

(2005)).

"CUIPA identifies and prohibits a number of 'unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.'" *Kim*, 2015 WL 6675532, at *5 (citing Conn. Gen. Stat. § 38a-316.) "Among these are '[u]nfair claim settlement practices' such as 'not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.'" *Id*. (quoting Conn. Gen. Stat. § 38a- 316(6)(F)). To prevail on a CUIPA claim, a plaintiff must show that "the unfair settlement practice was committed or performed with such frequency as to indicate a general business practice." *McCulloch v. Hartford Life & Accident Ins. Co.*, 363 F. Supp. 2d 169, 182 (D. Conn. 2005).

Plaintiffs claim that Harleysville violated CUTPA and CUIPA by "fail[ing] to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Am. Compl. ¶ 40. By denying coverage for the Mouras' alleged damage, Plaintiffs claim that Harleysville "has become a part of or confirmed its participation in an insurance industry wide practice of denying coverage for concrete decay claims, notwithstanding the clear provisions of the homeowner's policy, including any previous iterations of that policy, to the contrary." *Id.* ¶ 39. Plaintiffs support their claim further by alleging that Harleysville "refus[ed] to provide coverage in at least two (2) other instances involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language identical to that in the plaintiffs' policy." *Id.* ¶ 42 (citing *Mesite v. Harleysville Preferred Ins. Co.*, et al., No. 3:17-cv-01630 (AWT) (D. Conn., Notice of Removal Sept. 28, 2017); *Eichacker v. Citizens Ins. Co. of Am.*, No. TTD-cv-16-6011587-S (Conn. Super. Ct., Complaint Nov. 10, 2016)).

Harleysville argues that its liability in this case is not "reasonably clear," and therefore their denial of coverage is not a failure under CUIPA to attempt in good faith to effectuate

prompt, fair and equitable settlements. Def.'s Mem. at 12. Harleysville argues that the Mouras

have "alleged nothing more than a mere coverage dispute regarding an unsettled area of law."

*Id.*. at 11. Harleysville additionally argues that the Mouras have failed to allege facts that show a

"general business practice" under CUTPA/CUIPA. *Id.* at 13-15. Harleysville argues that the two

lawsuits against Harleysville cited by the Mouras cannot be evidence that Harleysville is denying

coverage claims in bad faith because there have not been any substantive rulings in those

lawsuits, "let alone a ruling that Harleysville's interpretation of its policy language is incorrect or

somehow otherwise improper." *Id.* at 14.

Plaintiffs argue that their allegations are sufficient to survive a motion to dismiss their

CUTPA/CUIPA claims, noting that "there is no 'magic number' of other instances that a plaintiff

must allege to survive a motion to dismiss on an unfair settlement practices claim under CUIPA . . ."

Pls.' Mem. at 11 (quoting *Belz v. Peerless Ins. Co.*, 46 F.Supp.3d 157, 167 (D. Conn. 2014)).

Plaintiffs also point out that Harleysville "cites to decisions that granted summary judgment to

the insurer in concrete decay cases on the insureds' CUTPA/CUIPA claims but ignores that those

same courts had previously denied the insurers' motions to dismiss the CUTPA/CUIPA claims

based on allegations similar to those contained in the Mouras' First Amended Complaint." *Id.* at 10.

The Court agrees.

Although a plaintiff must show "more than a single act of insurance misconduct," *Karas*

*v. Liberty Mut. Ins. Co.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014),

> there is no 'magic number' of other instances that a plaintiff must
> allege to survive a motion to dismiss on an unfair settlement
> practices claim under CUIPA through CUTPA's enforcement
> provision; rather, the allegations must be considered in the context
> and circumstances presented by the entire complaint.

*Belz*, 46 F. Supp. 3d at 167; *see also Oliveira* v. *Safeco Ins. Co. of Am.*, No. 3:18-cv-338 (VAB),

2019 WL 4109461, at *7 (D. Conn. Aug. 29, 2019) (denying a motion to dismiss CUTPA/CUIPA claims where plaintiffs pointed to three similar denials of coverage); *Maki v. Allstate Ins. Co.*, 320 F. Supp. 3d 380, 385 (D. Conn. 2018) (denying motion to dismiss CUTPA/CUIPA claims without noting the number of times the defendants had allegedly refused to effectuate prompt, fair, and equitable settlements); *Metsack, et al. v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01150 (VLB), 2015 WL 5797016, at *9-11 (D. Conn. Sept. 30, 2015) (denying a motion to dismiss CUTPA/CUIPA claims where plaintiff alleged five actions by defendants supporting a general business practice); *Gabriel v. Liberty Mut. Fire Ins. Co.*, No. 3:14-cv-01435 (VAB), 2015 WL 5684063, at *5 (D. Conn. Sept. 28, 2015) (denying motion to dismiss CUTPA/CUIPA claim where plaintiffs alleged that the defendant and defendant's associated entities denied coverage in four similar instances); *Karas,* 33 F. Supp. 3d at 117 (denying motion to dismiss CUIPA/CUTPA claim where plaintiffs alleged that defendant denied coverage in three similar instances); Order on Motion to Dismiss, ECF No. 19, *Mensher v. Liberty Mut. Fire Ins. Co.*, No. 3:15- cv-01007 (WWE) (D. Conn. Oct. 28, 2015) ("ORDER denying … Motion to Dismiss [claims including CUTPA/CUIPA claims] for the reasons articulated in the rulings on the motions to dismiss in the analogous cases, *Gabriel*, 2015 WL 5684063 and *Metsack*, 2015 WL 5797016").

Harleysville urges the Court to find that the Mouras cannot rely on two unresolved lawsuits against Harleysville as examples of unfair business practices, arguing that "instances of litigation alone are insufficient for purposes of pleading a general business practice." Def.'s Reply at 8 (citing *Hawkeye, LLC v. Zurich Am. Ins. Co.*, No. 3:10-cv-899 (JCH), 2011 WL 1216408, at *2 (D. Conn. Mar. 29, 2011) (granting a motion to dismiss a CUTPA/CUIPA claim because "nowhere in [the plaintiff's] description of [lawsuits against the defendant insurance

company] does it explain the status of the cases and whether a finding that [the defendant] engaged in that practice was made, and there are no allegations with respect to the resolution of the cited cases. Thus, there are no allegations that [the defendant] engaged in insurer misconduct in those cases.")).

But courts in this District have found, in cases like this one, that lawsuits can serve as evidence of unfair claims settlement practices even if the lawsuits have not been resolved against the insurance company. *See, e.g.*, *Oliveira*, 2019 WL 4109461, at *7 (allowing three similar lawsuits against the defendant to serve as examples of coverage denials for purposes of establishing general business practice at the motion to dismiss stage); *Karas*, 33 F. Supp. 3d at 117 n.6 (allowing three similar lawsuits against the defendant to serve as examples of coverage denials for purposes of establishing general business practice at the motion to dismiss stage); *Metsack,* 2015 WL 5797016, at *10 (allowing five similar lawsuits against the defendant to serve as examples of coverage denials for purposes of establishing general business practice at the motion to dismiss stage); *Gabriel*, 2015 WL 5684063, at *5 (allowing four similar lawsuits against the defendant to serve as examples of coverage denials for purposes of establishing general business practice at the motion to dismiss stage).

As this Court recently explained in *Oliveira*,

> [p]laintiff must only allege that Defendant's conduct occurs with sufficient frequency to constitute a "general business practice," which is accomplished here by referencing other cases where insureds were similarly denied coverage for concrete decay claims. That is a different question than whether the cases Plaintiff cites resulted in a finding that these business practices were unlawful.

2019 WL 4109461, at *7 (quoting *Clark v. Amica Mut. Ins. Co.*, No. 3:16-cv-1573 (JBA), 2018 WL 2725441, at *8 (D. Conn. June 6, 2018)).

Here, the Mouras point to two additional cases where Harleysville denied similar coverage claims, Am. Compl. ¶ 42, and Harleysville does not dispute that it in fact denied the claims in those cases. The Mouras also allege that Harleysville's denials are part of an industry-wide practice of denying coverage for similar concrete decay claims. *Id.* ¶ 32-42. The Mouras further allege that Harleysville's unfair practices proximately caused them to suffer loss and damages. *Id.* ¶ 45. This is sufficient to state a claim under CUTPA/CUIPA.

The issue of whether Harleysville's actions constitute an unfair business practice under CUTPA/CUIPA thus is better addressed at the summary judgment stage. Courts in this District have routinely found that CUTPA/CUIPA claims in these cases should be resolved at the summary judgment stage rather than the motion to dismiss stage. *See, e.g., Oliveira*, 2019 WL 4109461, at *7 (denying a motion to dismiss CUTPA/CUIPA claims); *Halloran*, 2018 WL 5840031, at *17 n.8 (D. Conn. 2018) (denying a motion to dismiss CUTPA/CUIPA claims); *Maki*, 320 F. Supp. 3d at 385 (denying a motion to dismiss CUTPA/CUIPA claims); *Sirois v. USAA Cas. Ins. Co.*, No. 3:16-cv-1172 (MPS), 2017 WL 3726468, at *7-8 (D. Conn. Aug. 29, 2017) (denying a motion to dismiss CUTPA/CUIPA claims); *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, No. 3-16-CV-00510 (JCH), 2016 WL 6246300, *4 (D. Conn. Oct. 25, 2016) (denying a motion to dismiss CUTPA/CUIPA claims); Minute Entry, ECF No. 28, *Kowalyshyn et al v. Excelsior Ins. Co.*, No. 3:16-cv-00148 (KAD) (May 12, 2016) (denying two motions to dismiss CUTPA/CUIPA claims after a hearing before Judge Jeffrey A. Meyer); *Gabriel*, 2015 WL 5684063 (denying a motion to dismiss CUTPA/CUIPA claims); *Karas*, 33 F. Supp. 3d at 117 (denying a motion to dismiss CUTPA/CUIPA claims); *Roberts v. Liberty Mut. Fire Ins. Co.*, No. 3:13-cv-435 (SRU), 2013 WL 12399132, at *2 (D. Conn. Dec. 16, 2013) (denying a motion to dismiss CUTPA/CUIPA claims).

Accordingly, Count Three, the CUTPA/CUIPA claims against Harleysville, will not be dismissed.

**IV.  CONCLUSION**

For the foregoing reasons, **GRANTS** the motion to dismiss Count One and **DENIES** the motion to dismiss Counts Two and Three.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of October, 2019.

 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE